**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TBS Group, Inc., | ) | No.: 16-cv-5855 |
| | ) | |
| Plaintiff, | ) | The Honorable Judge |
| | ) | John W. Darrah |
| v. | ) | |
| | ) | JURY TRIAL |
| City of Zion, Illinois, | ) | DEMANDED |
| | ) | |
| Defendant. | ) | |

**TBS GROUP, LLC'S AMENDED COMPLAINT FOR VIOLATION OF THE FAIR HOUSING ACT**

**Parties, Jurisdiction, and Venue**

1. TBS Group, LLC (TBS) brings this action pursuant to the Fair Housing Act, as amended 42 U.S.C. §§ 3601 et seq. TBS is a landlord with properties in Zion, all located in majority-minority neighborhoods and rented almost exclusively to African-American tenants. The addresses of TBS' property are set forth herein. *Supra*, ¶ 15(d).

2. This matter involves the Fair Housing Act, 42 U.S.C. § 3601 et seq. This Court has original jurisdiction under the Fair Housing and Federal question jurisdiction over this action under 28 U.S.C. § 1331.

3. Defendant City of Zion (Zion) is a political subdivision of Lake County in the State of Illinois located within the Northern District of Illinois. The Mayor of the City is the head of the City's executive branch, and the Council members are the City's legislative branch.

4. The Planning and Zoning board members and chairperson are appointed by the Mayor (Zion Ordinance 201-O-19).

5. The Planning and Zoning Board governs, non-exhaustively, preparation and recommendation of a comprehensive plan, to suggest reasonable requirements with regard to

streets, roads, and alleys, to suggest specific improvements to the comprehensive plan, to recommend zoning changes, and to hear appeals of decisions of the building inspector. Zion Ordinance 201-O-19.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because Defendant is a municipal corporation subject to personal jurisdiction this district.

## ZION DEMOGRAPHICS AND TENURE

7. Defendant lists current demographics of its population as 31 percent African-American and 27 percent Latino. http://www.cityofzion.com/economic-development/demographics/ (last accessed 5/16/2016). An accompanying column posted by Defendant shows that Defendant sees its percentage of these populations as being higher than surrounding Lake County. *Id*. The population is categorized as 48.9 percent White. *Id*. Renters in Zion are 39.3 percent African-American and 14.9 Latino. http://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?fpt=table (last accessed 5/16/2016).

Only 39 percent of renters are non-Hispanic whites. *Id*.

8. From 1990 to 2000, the number of white renters in Zion decreased by 22.75 percent. U.S. Census Bureau, http://www.public-record.com/content/municipalities/lake/zion_census_demographics.asp (last accessed 2/20/2017).

9. From 1980 to 1990, the number of black renters in Zion increased by 112.84 percent and by an additional 60.20 percent from 1990 to 2000. Census Bureau, http://www.public-record.com/content/municipalities/lake/zion_census_demographics.asp (last accessed 2/20/2017).

## ZION OFFICIALS' REACTIONS TO DEMOGRAPHICS AND HOUSING TENURE

10. Defendant sees the percentage of housing units that are rentals as around 60 percent, where a "healthy" percentage is 20 – 30 percent. (Defendant's Mayor Al Hill in video linked from Defendant website purporting to be 10/2015 meeting, https://www.youtube.com/watch?v=Hk8f_3NKN9g, last accessed 5/16/2016). It has 3.5 percent of the population and 38 percent of the "low-income" housing of Lake County. *Id*. Now, renters and landlords will have to have certification before Section 8 benefits are renewed. *Id*.

11. Past Zion Mayor Lane Harrison stated to TBS' principal in or about 2005 that he did not want more African-Americans to move into her property in Zion.

## ZION OFFICIALS' HISTORICAL EFFORTS TO MAKE HOUSING UNAVAILABLE TO AFRICAN-AMERICANS THROUGH ZONING OR LAWS BASED RACE OR ON PROXIES FOR RACE

12. Defendant has previously tried to curtail rental development using Section 8 as a proxy for race. Federal District Court Judge Milton Shadur in 1982 declined to dismiss a fair housing claim brought by a landlord (developer) because Zion interfered with the construction of housing, using "Section 8" as a proxy for race:

> "Before the April 20 public hearing, Zion had advised Highlands (Complaint ¶ 25):
> ... the requested extension would be denied because the community did not desire any more "undesirable" people in Zion and the real problem was the requirement of the federal government that 20% of the tenants be eligible and receive rental subsidies.

> "More precisely, Highlands contends (Complaint ¶ 26):
> The refusal of the Defendants to extend the subject Ordinances was founded upon their desire to prevent the development from being completed. The racial hostility which was communicated to the Defendants by Zion residents dictated the action of the Defendants." *West Zion Highlands v. City of Zion*, 549 F.Supp. 673 (1982).

13. "Section 8" is a proxy for race, and, in the case of Zion, where officials feel unduly burdened, statistics bear out the perverse reasoning: Lake County administers the Section 8 program in the area including Zion. By 1993, almost 80% of subsidized black families were

3

located in two towns, Zion (62%) which was (at that time) 22% black, and North Chicago (18%) which was 34% black, with another 6% in Waukegan which was 20% black. Dr. Paul Fisher, *Racial and Locational Patterns of Subsidized Housing in the Chicago Suburbs: A Report to the MacArthur Foundation*, http://www.hcp-chicago.org/2014/wp-content/uploads/2013/10/Racial-and-Locational-Patterns-of-Subsidized-Housing-in-the-Chicago-Suburbs.pdf (last accessed 2/19/2017), p. 78.

14. Proxy and "archaic and overbroad generalizations" have been recognized as possible, and improper, motivations for statutes by the courts. *See e.g., Craig v. Boren*, 429 U.S. 190, 198, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

15. Zion contains several distinct neighborhoods, one along 2100 – 2700 Hebron Avenue. Most of TBS' properties are within this area. *Supra*, ¶ 15 (d).

    a. In the 1990s, this area was occupied by people about half of whom were white and about half of whom were black, separated by living on opposite sides of the street. Gary Mays, *Demolition is Sweet on Zion Street*, Chicago-Tribune, August 26, 1996. http://articles.chicagotribune.com/1996-08-26/news/9608260097_1_townhouses-demolition-urban-eyesore (last accessed 2/20/2017).

    b. In a prior attempt to eliminate rental housing for African-Americans in 1993 and 1995, Zion passed ordinances declaring the area "blighted." Steve Mills, *Hud Probes Bias in Zion's Blight*, Chicago-Tribune, December 22, 1994. http://articles.chicagotribune.com/1994-12-22/news/9412220273_1_blighted-blocks-landlords (last accessed 2/20/2017).

    c. Now, after the "blight" declaration, the area is even more segregated. The following figures were reached using American Fact Finder tools at www.census.gov. The area is in Census Tract 8603.1. It includes Block 2025, Block Group 2; Block 2027, Block Group 2;

4

Block 1001, Block Group 1; Block 1012, Block Group 1; Block 1000, Block Group 1; Block 2026, Block Group 2; and Block 2014, Block Group 2. As of 2010, the Census figures for the area included 120 total housing units, divided as follows:

48 (40 percent) Owner-Occupied (21 by white people, 16 by African-Americans, and 11 by Latinos and those of other races)

72 (60 percent) were Rented (25 by white people, 45 by African-Americans, and 2 by Latinos and those of other races)

The attempt to further segregate was successful: the area was 51 percent African-American and 10.8 percent Latino and other races; only 46 white people (38 percent) of the population remained—far lower than Zion's 48.9 percent white population.

       d.      Several of TBS' properties are in this area: 2108 Hebron, 2118 Hebron (2 Units), 2130 Hebron, 2136 Hebron, 2140 Hebron, 2144 Hebron, 2150 Hebron, 2156 Hebron, 2158 Hebron, 2160 Hebron, 2162 Hebron, 2200 Hebron (4 units, three owned by Plaintiff), 2202 Hebron (4 Units), 2204 Hebron, 2210 Hebron, 2212 Hebron. In addition, TBS owns neighboring properties on Galilee and Hermon. TBS' Hebron properties (23 units) are over 20 percent of the total housing units in the "blight" area and nearly half of the rental properties in the "blight" area—making TBS sorely affected by Zion's segregation efforts and locating the cause of TBS' ills soundly within Zion's invidiously discriminatory policies.

16.      In another attempt to limit rentals available to African-Americans and Latinos, Defendant maintains a "comprehensive plan." It was adopted in or about December 2015. The future contemplated by the comprehensive plan includes multiple-family housing (rental) relegated almost exclusively to a south-eastern area next to industrial uses and remote from green space. http://www.cityofzion.com/departments/economic_development/2016_final_zion_comp_plan.pdf, p. 112 (last accessed 5/16/2016).

5

17. In another attempt to eliminate African-American and Latino rental units, the Village adopted an ordinance classifying properties where residents sought help from the police as "nuisance" properties. Luke Hammill, *Zion Nuisance Property Ordinance Raises Concerns Among Affordable Housing, Property Rights Advocates*, News-Sun, February 17, 2017, http://www.chicagotribune.com/suburbs/lake-county-news-sun/news/ct-lns-zion-nuisance-property-ordinance-st-0215-20170217-story.html (last accessed 2/19/2017).

## ZION'S RENTAL REGISTRATION AND INSPECTION ORDINANCE

18. The above (Para. 11) distribution of "Section 8" is not lost on Zion Mayor Al Hill, who has said, during deliberation of the rental and inspection fee ordinance:

> "Zion has 3.5 percent the population of Lake County. We have 38 percent of the Section 8 vouchers that Lake County gives out. And it's an issue that we have to address. … We have to get our arms around all the rest of the issues that are associated with too many rental units and too much Section 8 rental units." Luke Hammill, *Zion Nuisance Property Ordinance Raises Concerns Among Affordable Housing, Property Rights Advocates*, News-Sun, February 17, 2017, http://www.chicagotribune.com/suburbs/lake-county-news-sun/news/ct-lns-zion-nuisance-property-ordinance-st-0215-20170217-story.html (last accessed 2/19/2017).

19. During a public forum about the inspection ordinance, a resident referred disparagingly to "Section 8" and "these people," words understood to be proxies for race and national origin. Officials answering back highlighted the disproportionate number of "Section 8" vouchers in Zion. https://www.youtube.com/watch?v=Hk8f_3NKN9g, last accessed 5/16/2016.

20. Under the rental registration and inspection ordinance, Ordinance 15-O-33, Registration and inspection fees are $100.00 or more each. Violations can accrue a fine of $750.00 per day the alleged violation exists and up to $10,000 per year. Zion Municipal Code, 10-180. http://www.cityofzion.com/wp-content/uploads/2016/01/section_10-180_ord.pdf (last accessed 5/16/2016).

21. Plaintiffs received notices that they must pay or face increased fines. **Exhibit A**.

22. Almost all of Plaintiffs' tenants are Latino or African-American.

6

23. TBS does not have the financial means to comply with the ordinance. The criteria for the inspections is not defined, giving Defendant latitude in deciding which properties "pass" and which do not. Defendant has, effectively, condemned Owner's property by subjecting Owner to a fee it cannot pay and mandating the properties live up to vague terms that can be applied in a discriminatory manner, particularly to deem properties occupied by African- American and Latino tenants unrentable.

24. On information and belief, the code is enforced selectively against landlords who have African-American and Latino tenants, like Plaintiff. Alternatively, it has a disparate impact on them. As a result, the code interferes with the ability of Plaintiff to carry out lawfully-executed contracts (leases) with African-American and Latino tenants.

## CAUSE OF ACTION

25. Zion's adoption of the Rental Property Registration and Inspection Code as described above has made housing unavailable because of race, national origin, or color in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a).

26. Zion's adoption and imminent implementation of the Comprehensive Plan will make housing unavailable because of national origin, race, or color in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a).

27. The conduct of Zion, through its officials, described above, constitutes a denial of the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. §§ 3601 et seq., to African-Americans, Latinos, and those who rent to them, including TBS.

28. TBS has been injured by Zion's discriminatory actions as described above, namely by being subject to fees and fines, and is an aggrieved person. TBS has suffered, and will continue to suffer, damages as a result of Zion's discriminatory conduct.

7

29. Zion's conduct has been intentional, willful, and taken in disregard of TBS and its African-American and Latino tenants.

WHEREFORE, Plaintiff, TBS Group, LLC, prays the Court enter an ORDER that:

1. Declares that the actions of the Defendant described herein constitute violations of the Fair Housing Act;

2. Enjoins the Defendant, its officials, agents, and employees, and all other persons in active concert or participation with it, from continuing to discriminate on the basis of national origin, race, or color in violation of 42 U.S.C. §§ 3601 et seq.;

3. Requires such actions by the Defendant as may be necessary to restore all persons aggrieved by Defendant's discriminatory housing practices to the position they would have occupied but for the Defendant's discriminatory conduct;

4. Issues a Temporary Restraining Order restraining Defendant City of Zion from further prosecuting ordinance violations or administrative remedies against TBS Group, LLC and a Preliminary Injunction and a Permanent Injunction enjoining the Defendant from prosecuting ordinance violations or administrative remedies against TBS Group, LLC or other landowners;

5. Awards monetary damages to each person aggrieved by Defendant's discriminatory housing practices pursuant for actual, compensatory, emotional, pain and suffering, and attorney's fees and costs of bringing this action.

6. For such other relief as justice may require.

**JURY DEMAND**.

PLAINTIFF DEMANDS TRIAL BY JURY FOR ALL MATTERS SO TRIABLE.

        Respectfully submitted,

        TBS GROUP, LLC
        By: ___/s/Kelli Dudley_____
        Kelli Dudley, Attorney for Plaintiff TBS

Kelli Dudley, The Law Office of Kelli Dudley
1658 Milwaukee #100-8377
Chicago, IL 60647
Ph: 312-771-9770
Email: attorneykelli@sbcglobal.net
ID #6279068